UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America           ) | |
|                                    ) | |
| v.                                 ) | USDC No. 23-cr-313 (RC) |
|                                    ) | |
| Suzanne Kahler, *defendant*.       ) | |

DEFENDANT'S SENTENCING MEMORANDUM

Defendant, through undersigned counsel Nathan I. Silver, II, Esq., appointed by this Court under the Criminal Justice Act, submits this memorandum to aid at sentencing on February 2, 2024 at 2 o'clock p.m. when she appears via videoteleconference (VTC) before the Court for her sentencing hearing.

The defendant is a productive, law-abiding citizen who has no criminal history. She, with her husband Ralph Kahler, pled guilty to the offense of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40 U.S.C. §5105(e)(2)(G). She has been gainfully employed her entire adult life. She has a sense of civic duty and responsibility to her country. This case is doubly anomalous, as it represents her first arrest (soon conviction), and is the result of not disdain for but love of country.

The defendant seeks, as her husband in his sentencing memorandum, a period of time served. Alternatively, the defendant seeks a period of unsupervised probation of no more than one (1) year. The defendant submits that the government's recommended sentence of three years (36 months) of probation, 14 days of intermittent confinement and 60 hours of community service is disproportionate to the conduct in this case. (ECF Doc. 24, Government's Sentencing Memorandum ("Govt. Memo") filed Jan. 11, 2024 - page 1)   The U.S. Probation Office

recommends appropriately a sentence of one (1) year probation, with no period of custody.  (ECF Doc. 23, "Sentencing Recommendation," filed Jan. 5, 2024 - page 1)  The defendant's recommendation differs slightly from that of the Probation Office.

The defendant's conduct on January 6 and the circumstances of her arrest were identical to those of her husband, so she incorporates by reference the coverage of the same in his Memorandum in Aid of Sentencing (ECF Doc. 29, filed Jan. 11, 2024, at pages 1, 4 and 5)[1]

Finally, the defendant differs from the "Role Assessment" which appears in the Presentence Report ["PSR"] at page 5.  It contends the defendant and her husband "were knowing and willing participants in this case whose (roles as rioters were) instrumental to the commission of the offense."  On the contrary, the defendant and her husband were *not* rioters, rather they were present as *others* rioted, who maintain they did not even see others riot.  She also disputes that "[t]hey were average participants whose conduct was not peripheral to the advancement of the offense."  (Id.)  Though they were inside the Capitol for a few minutes, they were merely at, if not actually beyond, the periphery of the riot..

The defendant will turn to the history of the case and provide a brief, one hopes succinct, argument in favor of the requested sentence.

1.  The defendant initially appeared before Zia M. Faruqui on July 6, 2023, on a criminal complaint 23-mj-00152 (ZMF).[2]  She had been arrested earlier that day.  After her arrest but before she was brought to court, she waived her rights, answered the questions of the agents, and

---

[1] The defendant also incorporates by reference the letters written in support of her and husband, which he includes as an Exhibit to his sentencing memorandum. (ECF Doc. 29).

[2] The Complaint (ECF Doc. 1, filed July 7, 2023, appears only on the docket for Ralph Kahler in #23-mj-152 (ZMF), predecessor to case 23-cr-312 (RC).  It does not appear on the defendant's docket in case #313.

described her conduct on January 6. She was charged along with her husband with four misdemeanor offenses: (a) Entering and Remaining in a Restricted Building (Count One), in violation of 18 U.S.C. §1752(a)(1); (b) Disorderly and Disruptive Conduct Which Impedes the Conduct of Government Business, in violation of 18 U.S.C. §1752(a)(2); (c) Disruptive Conduct in the Capitol Buildings, in violation of 40 U.S.C. 5104(e)(2)(D), and (d) Demonstrating, Picketing or Parading in a Capitol Building, in violation of 40 U.S.C. 5105(e)(2)(G) ("Demonstrating"). She was released on her own recognizance the same day, and has been in compliance with pretrial conditions since.[3]

      2. On September 12, 2023, per a Plea Agreement with the United States, the defendant entered a plea of guilty to a criminal information charging Parading, Demonstrating or Picketing, a petty offense which carries a maximum sentence up to six (6) months imprisonment, a fine of up to $5,000, a term of probation not to exceed five (5) years and a $10 special assessment. As a petty offense, the U.S. Sentencing Guidelines do not apply. (ECF Doc. 20, Presentence Investigation Report ("PSI"), page , ¶23) The defendant agreed to pay $500.00 in restitution toward defraying the cost of repairing damage to the U.S. Capitol from the January 6 riot. The plea to Parading will discharge the defendant from liability for the remaining charges that were found in the Criminal Complaint.

      3. The defendant's husband has described their conduct as getting carried along, if not carried away, by the crowd. Many who entered the Capitol had a mistaken belief that their conduct was protected by the First Amendment, which assures free speech, the airing of

---

[3] The defendants were also required to remove from their residence firearms in their possession. They did so expeditiously, placing them in the custody of the local police. The defendants will seek at sentencing a lifting of the restriction regarding their lawful possession of firearms.

grievances, and peaceful assembly. Unfortunately, the Kahlers were wrong in thinking that since parading, demonstrating and picketing aren't themselves criminal, are constitutionally sanctioned, and don't involve misconduct or misbehavior (like the petty offense of disorderly conduct under §5104(e)(2)(D)), that those activities would be permitted inside the Capitol. In fact, they are *never* allowed inside a Capitol building.[4] The defendants, apparently out of curiosity as much as anything else, went inside the Capitol, and while there acted peacefully and respectfully. They caused no injury to persons or property.[5]

    4. Under 18 U.S.C. §3553(a) the following factors: (a) Factors To Be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider - (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the

---

[4] The statute appears to be designed principally, perhaps exclusively, for those days and times when the Capitol is open to visitors. The workings of our government are meant to be visible, if not transparent, to our people, who are sovereign. The Capitol opens itself to the public so that the government can be seen in action. But decorum and order must at the same time be maintained, so the activities of demonstrating, parading and picketing, otherwise legal, are not allowed. It so happens that on January 6, the Capitol itself was closed to the public but still in session, here to certify the vote for president.

[5] Contrast the conduct of those who entered the Capitol, albeit when the Capitol was open, to protest the nomination of Brett Kavanaugh to the Supreme Court. Their stated purpose, planned in advance, was to disrupt the hearings, which they did. All but one of the protesters were charged under D.C. Code statutes, not federal law. For a discussion of this, see Defendant's Sentencing Memorandum, *United States v. Jenny Cudd,* 21-cr-0068 (TNM), pp. 49-54. Ms. Cudd made a number of inflammatory statements and 19 minutes inside the Capitol. She pled guilty to Entering and Remaining on a Restricted Building or Grounds, a Class A misdemeanor and guideline offense in violation of 18 U.S.C. 1752(a)(1), and was sentenced to two (2) months probation, a $5,000.00 fine and $500.00 in restitution. Defendant acknowledges that the appalling nature of the events of January 6 was different in kind from that involved with the Kavanaugh hearings.

defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner….

     5.  The defendant submits that the government's recommendation of fourteen (14) days of intermittent confinement, along with three (3) years probation and sixty (60) hours of community service (in addition to the payment of $500.00 in restitution, an amount the defendant has already agreed to pay) is not supportable..  It's the same sentence the government recommended in the case of *United States v. Brian McGee,* 23-cr-96-01  That case, too, involved a defendant with no criminal record and lengthy service to our country in the armed forces, along with civilian service in aviation.  In *McGee,* the government's recommendation was based largely on messages, dozens of them, the defendant posted on social media starting nearly a month *after* January 6 and continuing into the following year (2022). The government characterized Mr. McGee as "a prolific writer of violent content," and then quoted individual messages.  Mr. McGee's words combined invective and vituperation that Judge Randolph D. Moss felt showed a lack of remorse on the defendant's part, though not necessarily a determination to act criminally in the future, if aroused.   That lack of remorse troubled the Court and influenced the sentence of three years probation.[6]  Even so, Judge Moss denied the government's request for fourteen days of confinement, imposing instead a period of seven days.

     6. Nothing of the sort is found in the defendant's conduct, before, during or after the January 6 riot.  Even so, the FBI saw fit to send a SWAT team of seventeen agents to the defendant's home on July 6, 2023, in order to arrest her and her husband, two persons with no

---

[6] Mr. McGee's codefendant, Jeremy Christian Harrison, received two years probation and 30 days of home detention, in large part because he appeared to show true remorse for his conduct.

criminal record charged with no violent or dangerous crime, place them in handcuffs,[7] and bring them into custody. They were humiliated before their neighbors; only the presence of a TV crew could have made it worse. Before the defendant was brought to court, she spoke voluntarily with the FBI agents. The video of the interview captures a sight, indecent and arguably obscene: a matronly 59 year-old woman with no criminal record charged with four non-violent misdemeanors, two of them petty, led into an interview room in handcuffs. Perhaps FBI rules left the agents with no choice but to immobilize the hands. After the interview, the defendant was brought to the courthouse lockup.[8] For one such as Mrs. Kahler, punishment preceded conviction for any particular crime.

      7. Thus, time served would be a suitable, appropriate sentence in this case. She submits that the very purposes of sentencing would be served, and not disserved, by such a sentence. It accounts for her own history and circumstances, as a model citizen, which may only be viewed positively. Further, her conviction, which cannot be expunged (another consequence), serves both general and specific deterrence; reflects the seriousness of her particular offense; and promotes respect for the law, providing a just punishment. It also recognizes that she is needless of the services probation provides. Should the Court also impose a period of probation, the defendant asks that it be unsupervised and not exceed one year. Certainly the resources of the U.S. Probation, likely already stretched, would be better applied to one who may benefit from its services. Unsupervised probation would allow the Court a measure of oversight and control, for

---

[7] The defendant's husband was also placed in leg irons at their home. The agents first cuffed the defendant's hands behind her back, then switched them to the front before they left in a car for the FBI field office. The agents placed the defendant in leg irons when they brought her to the U.S. Courthouse.

[8] The handcuffs were removed during the interview, then reattached at its conclusion for the trip to court.

an arrest on probable cause during the probationary term would subject her to revocation and up to six months in prison if found in violation.

For all the reasons noted above, the defendant respectfully requests a sentence of time served.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314
6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Elizabeth Mullin, Esq., Federal Public Defender, attorney of record for defendant Ralph Kahler, and upon Joseph Hong Huynh, Esq., USDOJ-AUSA detailee, attorney of record for the government, this 24th day of January, 2024

/s/
_____
*Nathan I. Silver, II*